# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| ISAAC LEE HYKES,<br><br>    Plaintiff,<br><br>v.<br><br>TIMOTHY F. GEITHNER,<br><br>    Defendant. | No. 2:11-cv-2720-SHL-dkv |
| ISAAC LEE HYKES,<br><br>    Plaintiff,<br><br>v.<br><br>JACOB J. LEW, Secretary of the Treasury,<br><br>    Defendant. | No. 2:13-cv-2264-SHL-dkv |
| ISAAC LEE HYKES,<br><br>    Plaintiff,<br><br>v.<br><br>JACOB J. LEW, Secretary of the Treasury,<br><br>    Defendant. | No. 2:14-cv-2035-SHL-dkv |

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORTS AND RECOMMENDATIONS**

Before the Court are the Magistrate Judge's Reports and Recommendations addressing the Defendant's two motions for partial summary judgment in these three consolidated cases. (ECF Nos. 36 and 43.)[1] Isaac Lee Hykes ("Mr. Hykes" or "Plaintiff") sued defendants Timothy

---

[1] While Plaintiff's three initial cases were ultimately consolidated, Defendant filed a motion for summary judgment on one of the cases prior to the consolidation. Subsequent to the consolidation, the Defendant filed a motion for summary judgment regarding the two remaining cases. The Magistrate Judge thus issued two separate Reports and Recommendations. This order addresses both.

F. Geithner ("Mr. Geithner") and Jacob J. Lew ("Mr. Lew" or "Defendant"), for violations of the Civil Rights Act of 1964, 42 U.S.C. § 1983.[2] Defendant moved for summary judgment on January 31, 2014, in case number 11-2720. (ECF No. 25.) Prior to issuing her Report and Recommendations on that motion, the Magistrate Judge granted Defendant's motion to consolidate the cases on February 19, 2014. (ECF No. 28.) The Magistrate Judge then recommended granting the initial motion for summary judgment. (Report & Recommendation on Def.'s First Mot. for Summ. J. ("Rep. & Recommendation I"), ECF No. 36.) The Plaintiff filed a timely objection. (ECF No. 38.) Shortly after the Magistrate Judge issued her Report and Recommendation, the Defendant filed a Second Motion for Summary Judgment for Case Nos. 13-2264 and 14-2035, which had since been consolidated with 11-2720. (ECF No. 37.) The Plaintiff filed a Response in Opposition to the Second Motion for Summary Judgment. (ECF No. 40.) After Defendant filed his reply (ECF No. 42), the Magistrate Judge issued her Report and Recommendation recommending granting the Second Motion for Summary Judgment. (Report & Recommendation on Def.'s Second Mot. for Summ. J. ("Rep. & Recommendation II"), ECF No. 43.) Plaintiff timely objected. (ECF No. 44.) Defendant filed a timely response in support of the second Report and Recommendation. (ECF No. 45.)

---

[2] The Plaintiff named the IRS as the sole defendant in his original, *pro se* complaint. (ECF No. 1 at 1.) Title VII suits against an agency of the federal government must be brought in the name of the head of the agency, pursuant to 42 U.S.C. § 2000e-16(c). (ECF No. 3.) Mr. Geithner was Secretary of the Treasury from 2009 to 2013 before being replaced by Mr. Lew. Under Rule 25(d) of the Federal Rules of Civil Procedure, "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d). Accordingly, the Clerk of the Court is directed to substitute Jacob J. Lew as the proper defendant in case 11-2720. Because Mr. Lew is already listed as the defendant in the other two causes of action, he will be referred to as "Defendant" throughout.

For the reasons set forth below, both of the Magistrate Judge's Reports and Recommendations are hereby ADOPTED. Defendant's motions for summary judgment are GRANTED.

I.   STATEMENT OF THE CASE

Mr. Hykes is an African-American man who alleged in each of his complaints that his employer, the Internal Revenue Service ("IRS"), discriminated against him on the basis of his sex, created a hostile work environment, and retaliated against him for filing complaints with the Equal Employment Opportunity Commission ("EEOC"). In his third complaint, Mr. Hykes also alleged that he was discriminated against based on his race. The discriminatory actions allegedly occurred while Mr. Hykes worked for the IRS in Memphis, Tennessee, as a Clerk, GS-0303-4, in the Power of Attorney and Centralized Authorization Filing ("POA/CAF") unit, Wage and Investment Division. (Def.'s Statement of Undisputed Material Facts ¶ 2, ECF No. 37-2.) The POA/CAF unit receives documents in various forms from taxpayers who designate representatives through power of attorney to advocate on their behalf. (Id. at ¶ 7.) The POA/COF's duties, which were rotated among the employees in the unit, included processing 24-hour and 48-hour faxes that needed to be completed before 4 p.m. each day. (Id. at ¶ 9.) Mr. Hykes worked the noon to 8:30 p.m. shift, but management adjusted his schedule during the spring and fall to work from 1:30 to 10 p.m. so that he could attend school. (Id. at ¶ 8.)

Mr. Hykes filed his first lawsuit on August 23, 2011, stemming from allegations made in EEO Complaint No. EEODFS07-322-F. (Id. at ¶ 3.) In that complaint, Mr. Hykes alleged the agency harassed him on the basis of his sex and in reprisal for prior protected EEO activity. Mr. Hykes alleged that his manager issued him an unfair performance review, giving him a 4.00 rating of "meets expectations" instead of the 5.00 rating of "exceeds expectations." (ECF No. 1-

1 at 3.) He also alleged that he was assigned more difficult work than the female employees in his unit. (Id. at 4.) An Administrative Judge found that Mr. Hykes failed to show he was discriminated against, a decision affirmed by the EEOC Office of Federal Operations ("OFO"). See Hykes v. Geithner, 2010 WL 3939952 (Office of Fed. Operations, Sep. 27, 2010). The OFO found that Mr. Hykes established a *prima facie* case of sex and reprisal discrimination, but failed to provide any evidence that showed management's non-discriminatory explanations were pretext for unlawful discrimination based on sex or reprisal. Id. at *6. The EEOC denied Mr. Hykes's request for reconsideration. (ECF 1-1 at 3.) In his appeal to this Court, in addition to the unfair performance review allegation, Mr. Hykes alleged that on three occasions Angela Echols ("Echols"), his supervisor, manipulated his workload to be double and triple the amount of his female co-workers and that she also manipulated the work assignments so that he received more complex work than his female co-workers. (ECF No. 22 at 3.)

Mr. Hykes was denied a request to amend his original EEO complaint to include additional allegations that formed the basis for some of his subsequent complaints against his agency. (ECF No. 1-1 at 2-3.) Mr. Hykes included some of those additional allegations in the subsequent lawsuits he filed against Defendant. In his second lawsuit, Mr. Hykes alleged that, based on his gender and prior EEO complaints, his managers denied his request to take 5.5 hours of sick leave on November 28, 2007; on January 10, 2008, management unfairly issued him a written directive to change his input duty day to January 11, 2008; and, from January 14 to 17, 2008, he was assigned to Form 3210 duties, which he claims were more difficult than the duties assigned to his co-workers. (Case No. 13-2264, ECF No. 1 at 3.) In his third lawsuit, Mr. Hykes alleged that, based on his race, gender, and prior EEO activity, management manipulated the

4

work assignments to give him more complex and time-consuming work than his female counterparts on May 22 and July 2, 2007. (Case No. 14-2035, ECF No. 1 at 3.)

II.     STANDARD OF REVIEW

A Magistrate Judge may submit to a judge of the court proposed findings of fact and recommendations for the disposition of a motion for summary judgment. 28 U.S.C. § 636(b)(1)(B). "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 149 (1985). After reviewing the evidence, the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1)(C). The judge may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. Id. When neither party objects to the Magistrate Judge's factual or legal conclusions, the district court need not review those findings under a *de novo* or any other standard. Thomas, 474 U.S. at 150.

III.    ANALYSIS

The Court has consolidated the Magistrate Judge's two Reports and Recommendations below in its analysis of Plaintiff's objections to both the findings of fact and the conclusions of law, as Mr. Hykes repeats many of the same contentions in his objections to both of the documents.

   A. Findings of Fact

Plaintiff has raised several objections to the Magistrate Judge's findings of fact from both of her Reports and Recommendations, few of which actually challenge the factual findings, instead simply disagreeing with them. Because Plaintiff has failed to establish genuine questions of material fact, the Court hereby ADOPTS the Magistrate Judge's findings.

In his objections to the Magistrate Judge's first Report and Recommendation, the Plaintiff challenged the finding that the performance evaluation rating of 4.00 indicates an employee "Exceeds Fully Successful" and is the second highest possible rating an employee can receive. (Pl.'s Objs. to Mag. J.'s Rep. & Recommendation, ECF No. 38 at 3.) The source of Mr. Hykes's objection lies not in the fact that this is an inaccurate factual description of the evaluation rating, but rather he contends that the 4.00 rating made him "less competitive and the 'inability to compete equally' for promotions, other jobs and selections, Quality Step Increases (QSI), Reduced In Force (RIF), Best Qualified (BQ)." (Id.) Mr. Hykes, in other words, is arguing that the rating is an adverse employment action. This conclusion of law will be addressed below. Insofar as Plaintiff objects to the factual finding, however, he offers no proof to establish it is in dispute.

Plaintiff's next disputed factual matter suffers from the same defect. In both his first and second set of objections, Plaintiff disputes the Magistrate Judge's finding that the 24-hour and 48-hour faxes were considered critical and priority work. (Id.; Pl's. Second Objs. to Mag. J.'s Rep. & Recommendation, ECF No. 44 at 3.) Mr. Hykes bases this assertion on the fact that management used this as a pretext to "hide, conceal and cover up intentional discrimination and animus against him and to harass him into working the 3210's duties and exempt the females from working the 3210's duties when they are assigned to them." (Pl.'s Objs. to Mag. J.'s Rep. & Recommendation at 3; Pl's. Second Objs. to Mag. J.'s Rep. & Recommendation at 3.) Once again, the Plaintiff does not offer any evidence to dispute the factual finding that 24-hour and 48-hour faxes were considered critical and priority work. In a related challenge, Mr. Hykes objected to the Magistrate Judge's finding that he failed to comply with Rule 56 of the Federal Rules of Civil Procedure by not citing to the record to support his assertion that 24-hour and 48-hour

6

faxes were, in fact, not critical. (Pl's. Second Objs. to Mag. J.'s Rep. & Recommendation at 9.) In her second Report and Recommendation, the Magistrate Judge found that Mr. Hykes did not oppose the fact in his response to the Defendant's first motion for summary judgment, and merely cited to his objection to the original Report and Recommendation in support of his assertion. (Rep. & Recommendation II at 6, n.8.) This fact is not in dispute.

Mr. Hykes next objects to the finding that work assignments were distributed using rotational assignment sheets. (Pl.'s Objs. to Mag. J.'s Rep. & Recommendation at 5; Pl's. Second Objs. to Mag. J.'s Rep. & Recommendation at 5). Mr. Hykes does not dispute this factual assertion as much as he suggests that there were regular deviations from those rotations in an attempt to give him more difficult work assignments. (Pl.'s Objs. to Mag. J.'s Rep. & Recommendation at 5; Pl's. Second Objs. to Mag. J.'s Rep. & Recommendation at 6.) While Plaintiff offers claims in both sets of objections that his co-workers were exempt from certain types of work for sometimes weeks at a time, because they are not supported with evidence in the record, they cannot undermine the Magistrate Judge's factual finding that work was assigned on a rotating basis.

Mr. Hykes's last objection stems from the factual conclusion that his employer allowed him to adjust his work schedule to work from 1:30 to 10 p.m. (Pl.'s Objs. to Mag. J.'s Rep. & Recommendation at 6; Pl's. Second Objs. to Mag. J.'s Rep. & Recommendation at 7.) Plaintiff's objection again does not dispute that he was allowed to work a later shift to accommodate his school schedule, but rather that such a statement "could be misinterpreted to mean that being in school made it impossible for Hykes to work the easier 24 and 48 hours faxes." (Pl.'s Objs. to Mag. J.'s Rep. & Recommendation at 6; Pl's. Second Objs. to Mag. J.'s Rep. &

Recommendation at 7.) This objection is also groundless because there is no proof in the record to contradict the factual statement that Mr. Hykes challenges.

Based on its *de novo* review of the Reports and Recommendations, the Court holds that none of these specific objections to the Magistrate Judge's factual findings have merit. Therefore, Plaintiff's objections are overruled and the Magistrate Judge's proposed findings of fact are ADOPTED.

B. Conclusions of Law

The Magistrate Judge has recommended that Defendant be granted summary judgment on the gender and race discrimination claims, retaliation claim, and hostile work environment claim. Plaintiff has offered general objections to each of those findings, which are addressed below.

As a preliminary matter, in support of many of his objections, Mr. Hykes cites the OFO report that found that he had established a *prima facie* case of sex and reprisal discrimination. See Hykes v. Geithner, 2010 WL 3939952 (Office of Fed. Operations, Sep. 27, 2010). The Magistrate Judge conducts a *de novo* review of the record in drafting its Report and Recommendation. This Court conducts a *de novo* review of the record in evaluating those Reports and Recommendations. The underlying facts that contributed to the OFO's conclusion will be considered in this analysis, but neither court is bound by the OFO decision.

1. Mr. Hykes's Gender and Race Discrimination Claims

Mr. Hykes's gender discrimination claims in his initial lawsuit are based on his 4.00 performance evaluation and an assigned workload that he claims was heavier and more complex than his female counterparts. To demonstrate a *prima facie* case of employment discrimination, the plaintiff must show that he (1) is a member of a protected group; (2) was subjected to an

adverse employment decision; (3) was qualified for the position; and (4) was replaced by a person outside the protected class, or similarly-situated, non-protected employees were treated more favorably. White v. Baxter Healthcare Corp., 533 F.3d 381, 391 (6th Cir. 2008). In her Reports and Recommendations the Magistrate Judge concluded that Mr. Hykes failed to satisfy the second and fourth elements of his *prima facie* case.

In his objections to the Magistrate Judge's first Report and Recommendation, Mr. Hykes first challenges the Magistrate Judge's conclusion that his 4.00 "Exceeds Fully Successful" performance evaluation was not an adverse employment action, but instead "an inconvenience or a minor embarrassment at best." (Rep. & Recommendation I at 14.) In support of his challenge to the Magistrate Judge's finding, Plaintiff claims that the 4.00 rating caused him to be passed over for many job vacancies. (Pl.'s Objs. to Mag. J.'s Rep. & Recommendation at 26; Pl's. Second Objs. to Mag. J.'s Rep. & Recommendation at 7.) Mr. Hykes offers the same evidence for his assertion that he offered in opposition to the Defendant's Motion for Summary Judgment – the Plaintiff's Response to Defendant's Request for Production of Documents and Interrogatories. (ECF No. 30-4.) However, there is no evidence contained within that document that supports his position that the 4.00 rating prevented Mr. Hykes from earning a promotion or an increase in salary, or any other potentially adverse employment action. More is required to establish that he was the victim of an adverse action. "If every low evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title VII would be triggered by supervisor criticism or even facial expressions indicating displeasure." Primes v. Reno, 190 F.3d 765, 767 (6th Cir. 1999).

Mr. Hykes also challenges the Magistrate Judge's finding that his allegations regarding preferential work assignments do not constitute an adverse employment action. The Magistrate

9

Judge concluded that "other than Hykes's own conclusory statement, he has not come forth with any evidence to support his allegation that he was given more difficult work or that the rotational assignments were not followed." (Rep. & Recommendation I at 18.) In his objections, Mr. Hykes reiterates his earlier assertions regarding the difficulty of the work he was assigned to do, but offers no evidence that the filing and stripping work to which he was often assigned was any more difficult than the other clerical duties performed by the clerks, or outside of the job description of his position. As such, there is insufficient evidence in the record to support Mr. Hykes's claim that he suffered an adverse employment action.

The consolidated lawsuits that contained Mr. Hykes's remaining claims alleged that he also was discriminated against based on his gender on five more occasions, and in two of those instances he also claimed racial discrimination. The Magistrate Judge concluded that, just as in his earlier disparate treatment claims, Mr. Hykes's failure to demonstrate that any of the actions taken against him were adverse meant that these claims could not survive the summary judgment motion. Three of the five incidents deal with Mr. Hykes being assigned more complex and time-intensive tasks, mirroring the assertions from his first suit. Mr. Hykes claims that on May 22, 2007, a manager "manipulated, sabotaged and altered the work in which they assign me the more complex and time consuming duties than my female co-workers." (Case No. 14-2035, ECF No. 1 at 3.) He alleges two managers repeated the act on July 2, 2007. (Id.) Finally, he alleges that from January 14 to January 17, 2008, his managers changed his work assignment so that he had to perform "3210 duties," which he claims were more difficult than the duties assigned to his co-workers. Mr. Hykes's claims regarding disparate treatment in his consolidated cases suffer from the same deficiencies as the disparate treatment claims from his first suit. Mr. Hykes has not cited to anything in the record that would substantiate the claims that he is making. Because the

Plaintiff has failed to meet his burden of establishing that he suffered an adverse employment action and failed to demonstrate that he was treated less favorably than similarly situated employees, his challenges to the Magistrate Judge's findings regarding his gender and race discrimination claims fail.

In addition to challenging the Magistrate Judge's finding that he failed to establish the presence of an adverse employment action, Mr. Hykes also challenges her finding that he failed to establish that he was treated differently than similarly situated employees from the non-protected group. While Mr. Hykes's failure to establish an adverse employment action is enough to dispense of his claim, for the sake of completeness, the Court will address his contentions regarding the similarly situated employees. The Magistrate Judge concluded that Mr. Hykes offered no evidence of their similarities in position, responsibilities, job function, or level of performance. In support of his objection to this finding, Mr. Hykes offers conclusory statements about differential treatment, but no actual evidence that would establish that he and his co-workers were similarly situated. His objections to the Magistrate Judge's finding on this issue also fail.

2. Mr. Hykes's Retaliation Claims

Mr. Hykes's sole basis for objecting to the recommendation on the retaliation claim in his initial lawsuit is that the previously alluded to OFO report found that he had established a *prima facie* case of reprisal discrimination. The Magistrate Judge correctly concluded that the retaliatory actions that Mr. Hykes complained of – the manipulation of his workload and his 4.00 evaluation rating – fell short of establishing a cognizable retaliation claim. To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that (1) he engaged in activity protected under Title VII; (2) the defendant knew that he engaged in the protected activity; (3) the

defendant subsequently took an adverse, retaliatory action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) the protected activity and the adverse action were causally connected. Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 736 (6th Cir. 2006). If Mr. Hykes successfully establishes his *prima facie* case of retaliation, then the tripartite McDonnell-Douglas/Burdine burden shifting framework applies, requiring Defendant to demonstrate a legitimate, non-discriminatory reason for the adverse action. See Strouss v. Michigan Dep't of Corrections, 250 F.3d 336, 342 (6th Cir. 2001). The burden would then shift back to Mr. Hykes to demonstrate that the proffered reason is a mere pretext. Id. Plaintiff has failed to establish that his 4.00 performance evaluation was an adverse employment action or that he was subjected to severe or pervasive retaliatory harassment by a supervisor. (See supra, III.B.1.) Plaintiff offered no evidence in support of the allegation that on Feb. 5, 2007, he was forced to perform more work or work that was more difficult than his female co-workers. For these reasons, the Magistrate Judge correctly concluded that Mr. Hykes failed to demonstrate a *prima facie* case of retaliation.

The Magistrate Judge concluded likewise, with a similar rationale, regarding the five retaliation charges in Mr. Hykes's remaining two complaints. Mr. Hykes's objections to those conclusions are also without merit. His retaliation complaints are based on the same incidents that formed the basis for his gender and race discrimination claims, including the three allegations of being assigned more difficult work duties. Just as in the earlier claims of retaliation, Mr. Hykes has not demonstrated that any of the alleged actions of his employer would qualify as an adverse employment action. As support for his objections he once again offers no additional proof to contradict the Magistrate Judge's findings, instead citing to a list of non-supportive documents, such as the investigative files that reference his allegations of

managerial misconduct (ECF No. 30-5, 30-6) and his August 10, 2012, request of the EEOC to reconsider its final decision. (ECF No. 38-3.) Mr. Hykes has failed to offer any evidence that would establish his retaliation claims regarding the assignment of more difficult duties.

The two remaining retaliation charges deal with management's alleged denial of Mr. Hykes's request for sick leave and his written directive to change his input day. The Magistrate Judge found that Mr. Hykes did not suffer an adverse retaliatory action regarding his request for sick leave. (Rep. & Recommendation II at 24.) In her declaration, Ms. Echols, Mr. Hykes's supervisor, said that he casually asked if he could go home in the middle of his shift on November 28, 2007. (ECF No. 37-7 at 2.) She told him he could not because the team had to pull together to get the work done because of a training session scheduled that day. (Id.) About an hour later, after Mr. Hykes and a co-worker had completed their work, Ms. Echols asked him if he still wanted to go home. He said "No," and later asked to fill out an EEO complaint to address her earlier actions, a request Ms. Echols honored. (Id.) Mr. Hykes did not rebut the evidence from Ms. Echols's declaration, and now asserts, without reference to any supporting evidence, that "no other employee had been denied leave under such life-threatening situation of having breathing problem from trying to keep up with the increase work load and extra added duties." (Pl's. Second Objs. to Mag. J.'s Rep. & Recommendation at 49.) Mr. Hykes offers no evidence, beyond this conclusory statement, that would suggest that the actions taken by Ms. Echols were an adverse employment action, therefore his objections regarding his sick leave cannot survive summary judgment.

Finally, Mr. Hykes objects to the Magistrate Judge's finding that the written directive to change his input day on January 10, 2008, was not an adverse, retaliatory action and that there was no causal connection between the supposed adverse, retaliatory action and Mr. Hykes's

13

protected activities. According to Ms. Echols's declaration, when an employee was assigned an "input day" they were required to perform a specific series of tasks that included inputting information into a database. (ECF No. 37-7 at 3.) Ms. Echols claimed that the input days were routinely altered – six times, in fact, between December 31, 2007 and January 11, 2008 – to ensure that the clerks would each spend the same number of days on input duty each month. (Id. at 2-3.) Mr. Hykes has provided no evidence that contradicts Ms. Echols's declaration. His objection claims that "the issuance of the written directive to the plaintiff gives evidence that Angela Echols reason for her actions were pretexts designed to hide, conceal and cover up intentional discrimination and intentional retaliatory animus against the plaintiff…" (Pl's. Second Objs. to Mag. J.'s Rep. & Recommendation at 50.) Standing alone, it does not.

Even if Mr. Hykes could have cited to a source in the record that supported that the retaliatory actions he alleges in any of his complaints established an adverse employment action, those claims still fail to establish a causal connection between the adverse actions and his protected activity. For the reasons stated above, Mr. Hykes's objections regarding all of his retaliation claims from both of the Magistrate Judge's Report and Recommendations are without merit.

3. Mr. Hykes's Hostile Work Environment Claim

Mr. Hykes alleges that, based on his race and gender, he was subjected to a hostile work environment. Whether making a claim based on sexual or racial harassment, a plaintiff must demonstrate the presence of each the following elements to establish the existence of a hostile work environment: (1) he was a member of a protected class; (2) he was subjected to unwelcome sexual or racial harassment; (3) the harassment was based on his protected status; (4) the harassment created a hostile work environment; and (5) the employer is liable. See Randolph,

14

453 F.3d at 733 (addressing gender-based hostile work environment claims); Barrett v. Whirlpool Corp., 556 F.3d 502, 515 (6th Cir. 2009) (addressing racially based hostile work environment claims). Title VII is violated "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive enough to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (internal quotations omitted). A hostile-work-environment plaintiff must still establish that his environment was objectively hostile, and also that he subjectively perceived the environment to be hostile. Williams v. General Motors Corp., 187 F.3d 553, 563 (6th Cir. 1999) (citing Harris, 510 U.S. at 21; Faragher v. City of Boca Raton, 524 U.S. 775 (1988). A court can consider a variety of factors in determining whether conduct is severe or pervasive enough to constitute a hostile work environment, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.

    a. Racially based hostile work environment

Mr. Hykes alleges two instances of racially based hostile work environment in Case No. 14-2035, both of which fail to establish that he was subjected to unwelcome harassment or that the environment was hostile. (Case No. 14-2305, ECF No. 1 at 3.) The claims involve the assertions, addressed earlier, that on May 22, 2007, and July 2, 2007, management manipulated, sabotaged, and altered the work assignments to give him more difficult duties. (See supra, III.B.1.) The Magistrate Judge found the record devoid of evidence that there was racial discrimination that was severe or pervasive enough to create an environment that a reasonable person would find abusive and permeated with discriminatory treatment. (Rep. &

15

Recommendation II at 13-14.) Establishing harassment based on race discrimination requires the plaintiff to show either "(1) direct evidence of the use of race-specific and derogatory terms; or (2) comparative evidence about how the alleged harasser treated members of both races in a mixed-race workplace." Williams v. CSC Transp. Co. Inc., 643 F.3d 502, 511 (6th Cir. 2011). Mr. Hykes has offered evidence of neither, either in his initial opposition to the summary judgment motion or in his objections to the Magistrate Judge's findings, therefore his claims for a racially based hostile work environment cannot survive summary judgment.

    b.   Gender-based hostile work environment

Mr. Hykes claims that the 4.00 rating and heavier and more complex workload (see supra III.B.1) as well as the two incidents that formed the basis for his racially based hostile work environment claims also established a gender-based hostile work environment. In addition, he alleges that the previously discussed denial of sick leave, and the written directive to change his input day, both discussed in Section III.B.2, also created a gender-based hostile work environment. Finally, he claims management created a gender-based hostile work environment when it assigned him to work Form 3210 duties from January 14 to January 17, 2008. Once again, Mr. Hykes fails to establish that he was subjected to unwelcome harassment based on his sex or that his work environment was hostile. To establish sex-based discriminatory animus, a plaintiff must show that "but for [his] sex, [he] would not have been the object of harassment." Williams v. Gen. Motors Corp., 187 F.3d 553, 565 (6th Cir. 1999). Mr. Hykes has failed to show that any of the actions taken by the defendant were based on his gender. Nor has Mr. Hykes established that the acts alleged were so pervasive or severe as to create an objectively hostile work environment. Mr. Hykes again cites to the OFO report as support for his objections to the Magistrate Judge's conclusions. (Pl's. Second Objs. to Mag. J.'s Rep. & Recommendation

16

at 32.) As additional support, Plaintiff declared "the court has failed to consider that all the actions that the plaintiff complained of was based on his male gender…" (Id.) This sort of conclusory statement, absent any evidentiary support, is not enough to preclude a motion for summary judgment. Because of this lack of evidence, Mr. Hykes's gender-based hostile work environment claims also fail.

IV. CONCLUSION

For the foregoing reasons, the Magistrate Judge's Reports and Recommendations are ADOPTED. The Defendant's motions for summary judgment are hereby granted.

**IT IS SO ORDERED,** this 15th day of September, 2014.

/s/ Sheryl H. Lipman
UNITED STATES DISTRICT JUDGE